The next case is number 2011-1149, MySpace Incorporated v. Graphon Corporation. Mr. Rounds. And you thought they were all here to hear you argue, isn't that a pity? That was my understanding. Is that not correct? May it please the Court, I'm Michael Rounds and I represent the appellant, Graphon Corporation. This is really a simple claim construction issue for this panel. As the Court knows, it reviews claim construction de novo. The primary issue before this Court is the construction of the term database that appeared in all of the patents below. Now, we believe the intrinsic evidence is clear that the only reasonable interpretation of the term database is a relational database. That is the only embodiment that is disclosed in the patents. It's not only the preferred embodiment, it's actually the only embodiment that is disclosed. The two key figures in these patents are figures 1A and figure 1B. The appellees admitted at oral argument that figure 1A discloses a relational database. Figure 1B also discloses that same relational database. There was simply no dispute on that key issue of claim construction. The specification also talks about searching fields in the database. It actually provides a form for this search. Fields are a foundational component for a relational database. Fields make a record stored in a table. Those are the key components of a relational database. It's right there in the specification. There's a number of terms in the claims here. Transaction ID, record, index, all classic hallmarks of a relational database. There's simply no dispute on these patents that this is a relational database based upon the unambiguous intrinsic record. Appellees cited to the background of the invention. There is a statement in the background referring to databases of various kinds. Our view is that's actually referring to makes, not to different kinds of databases. Most important, that's in the background of the invention. It's not in the core detailed description. And it's referring actually just to how to access data from the web. That's all it's talking about. And it discusses a preferred method of doing that, the common gateway interface. But that's it. It's definitely not talking about the database that is the relational database described in the detailed description. The appellees also cite to the ability that's referred to in this specification of searching by categories. However, if you turn back to the previous page in the patent, there's a description of all the fields. Categories is one of them. So categories is a field within a record, clearly connoting a relational database. The fact that there's a tree structure within that searchable field does not indicate whatsoever that this is not a relational database. That's how they're set up. The last argument that was made was with respect to Claims 5 and Claims 6 of the 367 patent. That doesn't support a construction for anything other than a relational database either. Claim 5 refers to the network server interfacing with the database through CGI scripts. Claim 6 refers to an SQL database. Those are simply preferred embodiments for the relational database. They are not an intent to claim a relational database only. It is just dead clear from this intrinsic record that a relational database is the proper construction. It is true that these claims don't use the word relational. But of course, that isn't the question. These claims are read by a person of ordinary skill in the art. It cannot be disputed that a person of ordinary skill, based upon the intrinsic record that I just reviewed, would look at these claims and say this is a relational database. We don't believe that the Court even needs to reach the extrinsic evidence in this case. Is the question whether this includes a relational database or is the question whether it excludes a hierarchical database? The issue is whether or not the database that is identified in all of these claims is a relational database. Well, it could be. But it could also be a hierarchical database unless hierarchical databases or hierarchical, don't call them a database, hierarchical, whatever they are, are excluded. Isn't that right? I don't believe so, Your Honor. And it's because of what I said to begin with. And that is that the only disclosure is of a relational database. Everything in that spec is directed to a relational database, not a hierarchical database. Yeah, but I'm not sure we're connecting. Okay, well let's make sure we are. In order to get where you want to go, we have to understand database, not simply to permissibly include relational databases. That's correct. But to inherently or expressly or impliedly exclude the hierarchical type because that's what the prior art, the MBB, had in it, right? No, in fact, that was disputed. The MBB actually had a file system just like you would have on Windows. It did not have a hierarchical database. The only evidence in the record about a hierarchical database was in Ms. Spielman's declaration. That was a hierarchical database that was designed by IBM and abandoned. It was not used by anybody of ordinary skill after the late 60s. So our view is that, number one, the spec does not have to exclude a hierarchical database. In this case, because it's so clear that it's a relational database. It has to exclude whatever it was in MBB, isn't that right? Otherwise you have an anticipation problem or not? Well, the bottom line is... Maybe I don't understand... Oh, you understand the issue perfectly. The definition of a relational database will exclude a file system. The evidence was just dead clear below. There's no dispute about that. That if it's limited to a relational database, it excludes the file system. That's correct. But if it includes a relational database and could include the file system or any other kind of data, call it a database or anything else you want to call it, then you've got a problem. So you need to exclude whatever it is we want to call whatever it is was in MBB. Is that fair? I'm just trying to understand your argument. I think that's a fair assessment. We have arguments that even if the definition is much broader as the court adopted below, that the MBB still does not invalidate all these claims. But certainly they're a step closer than they would be if the court adopted our claim construction for relational database. But you have to have a construction that excludes a reasonable interpretation of the MBB and anything that might be obvious in view thereof, don't you, in order to prevail an infringement? Well, I think we're talking about anticipation first and then obvious second. Well, all right. But the entire issue of the claim construction is a construction which may or may not exclude the accused structures. That's the core issue that was in the lower court. Yes, exactly. The whole foundation for this opinion, Your Honor, was the issue of finding that a database could include a file system. That's what led the court astray. That is the entire basis for this decision. That is the basis for the scope and content of the prior art. It's the basis for the differences between the prior art and the patented invention. And it's the basis for finding that Dr. McBride was a person of ordinary skill in the art. But viewed from the practical viewpoint with an eye to the construction, which you would have to have in order to prevail on the issue of infringement, the basis for the controversy. No, I believe that, as I indicated earlier, we have additional arguments. Clearly, if, in fact, the construction is affirmed by this court with respect to the construction that was adopted for database by the lower court, then there's a different question that needs to be asked for purposes of obviousness for certain claims. But if, in fact, it's not adopted, the whole order collapses. And in our view, this court has to reverse. Let me ask you a separate question. In light of the Bilski and our cipher source case, why is this a patentable subject matter? Well, Your Honor, that was not an issue that was raised by anybody below or on appeal. My view is that there is certainly enough structure in all these claims with database and the other elements that this can satisfy Bilski. No question. This is not just a pure business method patent or anything like that. But that was just simply not an issue that the parties addressed below. Well, it may be an issue anyway if it's in the case and it's quasi-jurisdictional. Well, Your Honor, if that— It wasn't really an issue on Bilski either, but that went off on it. Fair enough. I would just ask the court for—leave of court to brief that issue if, in fact, the court's interested in hearing argument on it. I just want to make one last point to follow up on these questions about anticipation and obviousness. Let's just assume for a second—well, let's do it this way. There was no evidence in the court below, none by anybody, that it would have been obvious to modify the MBB with the relational database and arrive at the claimed invention. That just was not evidence that was below. But— So even if— be quite familiar with relational databases rather than just this file system and would look at MBB and scratch their heads and say, hmm, I wonder what this would look like if it had a relational database in it. Well, I think what a person of ordinary skill would encounter is that they would look at the way that that device operated and understand that it would need a complete redesign in order to make it work with a relational database. And eventually they would start from scratch. So we frankly don't even think it's a reliable piece of prior art that a person of ordinary skill would rely upon. I see that my time is over, and I'll save two minutes for rebuttal. Thank you. Okay, thank you, Mr. Browns. Mr. Collins? With the court's permission, we'd like to reserve three minutes for my co-counsel, Christopher Cowell, representing Craigslist. Yes, okay. May it please the court, from Judge Plager's questions and Judge Newman's question, it's clear you understand the issue. It is whether, in fact, the common term used in the computer field, database, should be larded up with definitions and limitations that appear nowhere in the specification. It goes beyond importing the preferred embodiment. Graphon's construction is database means solely a relational database managed by a database management system software running on but separately from an operating system. In addition to that, their expert puts forward 19 additional limitations, many of which are nowhere discussed in the specification, and says this little term, database, means all these 20 elements. Graphon's patents are clear about what the invention disclosed in the claimed invention in those patents. The focus of those patents is about publishing content on the Internet in which the users have complete control over the content and classification of their entry. They are not directed to databases. They're not directed to database-specific technology. The problem that Graphon is facing is that, obviously, long before its applications were filed in December 1995, Professor McBrien had launched a very similar system that reads all over these claims. Indeed, he presented a paper at the first World Wide Web conference in early 1994 in which he described how his system allowed users to post content and exercise complete control over database entries. Graphon advances his argument about claim construction despite the fact that in earlier litigation, its own expert gave a completely different construction for the term database, directing Your Honor's attention to Joint Appendix 1993 when Graphon's expert in the previous litigation was asked for his definition outside the context of the patents of the term database. He merely opined, it is an organized collection of information. He was further asked, does a database need a database management system of any sort? Answer, no, a database doesn't need a database management system. Again, database management system appears nowhere in the claims. It's mentioned briefly in the preferred embodiment, but that's imported into Graphon's construction. Similarly, at Joint Appendix page 2002 to 2004, Graphon's expert in the previous litigation was asked about his definition of database in the context of these patents. And he said, it's an organized collection of information that is both a data store and a data source. Very similar to the construction that was adopted by the district court in this case. Interestingly enough, there's no mention of the term relational anywhere in the patents, none. There's no discussion anywhere in the patents of the benefits of one database system over another. There's no criticism of file systems. That all comes from Graphon's expert. Graphon's claim construction turns this court's claim construction precedents on its head. It takes a common term, database, lards it up with all these limitations, but this court's precedents are clear. In order to overcome that database should be given its plain and ordinary meaning, a collection of information that could be stored and accessed, they need to show that the inventors demonstrate an intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction representing a clear disavowed claim scope. As I was preparing for argument last night, I came across an interesting decision from this court. Admittedly, it's a non-presidential decision from earlier this year, but it is the Move, Inc. decision, Move, Inc. versus Real Estate Alliance from March 22, 2011. And in that case, a district court was faced with construing the very same term, obviously different patents, but the term database. And a district court in that case came up with this construction, and I'm reading from page 5 of the court's opinion. Creating the structure that houses data, additional language, but then such structure, including the tables, the fields in each table, and with relational databases, the relationships between the fields and the tables. On appeal, this court held that the district court's construction was improper. On page 6, this court said, Real, the patentee argues that the district court... Well, I should interrupt you. You can't put too much weight on a non-presidential opinion that doesn't present the full background. Fair enough, Your Honor. We realize that it is subject, it's the public record, and it stands for what it stands for. I completely agree. The point I wanted to make about it is that the reason that it didn't read in the limitations was the very same claim construction principle that I just enunciated, which is that absent a clear disavower, a contrary definition in the specification of prosecution history, the patentee is given the full scope of its claim language. I'm a little puzzled, easily puzzled, Mr. Collins, but I'm a little puzzled particularly about, let's assume that they're right about what a database ought to be, and putting aside Craig's List argument, which I will hear from later, I take it, does that really resolve the case? That is to say, database is only one limitation in the claim. The claim goes on, all these claims go on and have other limitations in them. The trial judge dealt with image, transaction ID, password protecting, charging element, update, and in each one of those cases, apparently there was no dispute about the construction of them, and then the trial judge either held them obvious or anticipated. Are we to understand that the only issue, then, turns on whether database is limited to relational databases as far as the ultimate outcome of this case, putting aside that other argument? I believe so. I would just say that— I'm a little puzzled by the way this case is shaped up in the briefing. The core of the party's disputes here are really claim construction issues. Graphon, there really aren't meaningful disputes or dispute of material fact on how the mother of all bulletin boards operated. There was a voluminous record that was submitted to the district court. In fact, on page 33 of Graphon's opening brief, they concede that there is no dispute as to how the mother of all bulletin boards operated. So, in essence, there are just claim construction issues. On image, Professor McBrien, as part of our motion for summary judgment, submitted a declaration saying that even, in fact, if you accept the district court's construction, it would have been a trivial modification to grab an image and then store it as part of the mother of all bulletin boards. Graphon never contested that. So, to the extent that there's any issue about image and a claim construction issue, that issue's been waived. The evidence was overwhelming that it would have been a trivial improvement, and that's unrebutted. The other limitations that were at issue—update, modify—the record is clear that that limitation was anticipated. Same with transaction ID, password protecting, and, frankly, charging. Graphon basically concedes it was a—everybody knew charging for accessing web entries already existed at that point. So, to answer your Honor's question, this is a claim construction issue, and it is principally resolved on the construction of database. Does database exclude every kind of other kind of database in the world, or should it be just given its plain and ordinary meaning of a collection of data that can be stored and accessed? Well, the only real question is whether it excludes the MBB. Well, the question is whether the MBB would satisfy the construction of database, the database being simply a collection of data that can be stored and accessed. And I don't think there's any—in fact, Graphon concedes, I think, in the lower—did in the lower court, and I think what we'll hear as well, that unless they get their construction, the MBB anticipates. I will yield back the balance of my time. Unless the court has any further questions. Okay. Thank you, Mr. Adams. Mr. Cahill. Thank you, Mr. Court. On behalf of Craigslist, I wanted to present the alternative argument that even if the court finds that the district court misconstrued the term database and that that term should properly be construed to be a relational database, as Graphon contends, then this court may still affirm the district court's finding of invalidity based on obviousness. This argument was—the standards for this court affirming based on a grounds not considered by the district court is set forth in the King Pharmaceuticals case. The argument has to have been adequately raised below first and second supported by the record. With respect to the argument being raised below, Craigslist briefed this argument fully in our reply brief in support of the summary judgment motion. It was briefed in reply simply because the evidence that it's based on, which is principally the expert declaration submitted by Graphon, that declaration was submitted in their opposition brief. So the first time we could have raised it was in our reply brief. Graphon requested or received an opportunity to submit a surreply. They chose not to address this argument, but they had the opportunity to address it. At oral argument, the judge was presented with this argument and heard oral argument from both sides on this issue of obviousness based on the combination of the MBB and a relational database. So as to the record supporting the obviousness, it's well established in Graphon's own expert testimony that relational databases were common in the mid-90s. And in fact, she testified that relational databases were common in the early 80s when she began working in the field. And in particular, Ms. Spielman testified, and this is in the record in her declaration that was submitted by Graphon, at J.A. 1558 through 60 and paragraphs 43 and 48 of her declaration and J.A. 1555, paragraph 36 of her declaration. In addition, she testified about the use of relational databases in the mid-1990s at J.A. 2123 through 25, which is her deposition testimony. But the one piece of evidence in the record that I want to highlight for this court is that Ms. Spielman in particular testified both in her declaration and in her deposition that it was well known at the time in the mid-90s when the patent was applied for that there were significant advantages to using a relational database over and above a file system like what was used in the MBB. And in particular, at paragraph 43 of her declaration, she says, a relational database overcomes many of the obstacles imposed on applications using a file system or a hierarchical database to store relational databases, or to store relational data, as relational databases are designed specifically to manage and organize large amounts of related data. It seems that my time is up, but based on her testimony. What about his argument that he addressed this? What about Mr. Brown's address this? What about the argument that you'd have to start all over if you tried to bring the relational database into the MBB? There is simply no evidence of that in the record. The record shows that their own expert has testified that everyone knew how to use relational databases, and there's nothing to suggest that it would be difficult to combine the MBB with a relational database. It's simply the combination of known elements to achieve a known purpose, which is the standard set forth in KSR. Okay. Thank you. Thank you, Mr. Cowell. I'm going to take Mr. Cowell to task on that last comment because it's my whole point. There was no evidence below with respect to combining the MBB with a relational database. That's their burden. They didn't lay it out. We know from the objective record that that code for the MBB was written for a file system, and we know that there's no chance that it could embody a relational database. And Mr. Cowell indicates that there was no evidence below. The bottom line is it's their burden to prove it. It's not in the record, and they did not prove it. Take one minute and tell us why you think there were improperly resolved disputed issues of fact. Give me one example of a disputed issue of fact, material disputed issue of fact, that the trial judge in this case, the magistrate judge, decided. Well, I think it's all the Graham factors. I think it's the scope and content of the prior art, improper factual findings. I think it's the level of ordinary skill in the art. There was no explicit finding. There was an implicit finding that Dr. McBrien was a person of ordinary skill who had no relational database experience. And the comparisons between the prior art and the patent. The judge dealt with that by rejecting your motion to have him excluded, have his testimony excluded. So the judge clearly dealt with that issue. Well, it's extrinsic evidence, Your Honor, on the issue certainly of claim construction. And the entire foundation for his opinions were based upon a file system being a relational database or being a database within the scope of the claims. Okay. Thank you very much. Thank you, Mr. Adams, Mr. Collins, Mr. Cowell. The case is taken under submission. That concludes the argued cases for this morning. All rise. The court will adjourn tomorrow morning at 10 o'clock a.m.